UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JULIE A. WILLIAMS )
)
V. ) NO. 2: 14-CV-375
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636, for a report and recommendation. Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act were administratively denied following a hearing before an Administrative Law Judge ["ALJ"]. Both the Plaintiff and the Defendant have filed Motions for Summary Judgment [Docs. 15 and 17].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*,

745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 35 years old on her alleged disability onset date of April 8, 2005. Her insured status for purposes of disability insurance benefits expired on December 31, 2010. Her applications were filed on November 18, 2011. She has a limited education. The Commissioner does not contend that she can perform her past relevant work with her present Residual Functional Capacity ["RFC"] as found by the ALJ.

Plaintiff's medical history as contained in the record is summarized in the Commissioner's brief as follows:

> In July 2005, David Wiles, M.D., a neurologist with the East Tennessee Brain and Spine Center, evaluated Plaintiff's back pain (Tr. 270). Plaintiff told him that her back pain had "not really debilitated her in her daily functions" but that over the past several months, it had started to cause pain that radiated from her low back into both buttocks and down the left leg (Tr. 270). Dr. Wiles noted that previous magnetic resonance imaging (MRI) scans showed degenerative disc disease at the L4-5 and L5-S1 levels (Tr. 270). At her follow-up in August 2005, Plaintiff told Dr. Wiles that she was satisfied with her medication regimen (Tr. 269). No surgery was recommended or desired (Tr. 269). In December 2005, Plaintiff reported that her back had "popped" three weeks earlier (Tr. 268). She was not interested in surgery (Tr. 268). Dr. Wiles recommended that she go to physical therapy (Tr. 267).
> When Plaintiff returned in March 2006, she told Dr. Wiles that she had not gone to physical therapy (Tr. 266). She reported that her right leg pain was so severe that she worried about going through therapy (Tr. 266). Surgery was "an absolute last resort" (Tr. 266). An April 2006 MRI scan showed degenerative disc

2

disease at L4-L5 and L5-S1 and a right paracentral disc extrusion compressing the right L5-S1 nerve root (Tr. 264). Dr. Wiles cautioned Plaintiff that she had likely built a tolerance to the medication Lortab (Tr. 265). He recommended and performed a right L5-S1 epidural steroid injection (Tr. 265). Later that month, she reported that the epidural steroid injection had helped her pain (Tr. 261). Another epidural steroid injection was performed (Tr. 261).

Ten months later, in February 2007, Plaintiff returned to Dr. Wiles and reported that her back pain had been increasing (Tr. 259). In April 2007, an MRI scan of Plaintiff's lumbar spine revealed end plate changes at the L4-L5 level with degenerative disc disease and degenerative narrowing and desiccation of the intervertebral disc at this level (Tr. 252, 276-77). The remainder of the lumbar spine looked normal (Tr. 252). A discogram showed positive concordant pain at both the L4-L5 and L5-S1 levels with reproduction of concordant pain at pressures less than 50 PSI (Tr. 252, 273-75). In May 2007, Dr. Wiles noted that Plaintiff was "pretty miserable with back pain" and had elected to proceed with surgical intervention (Tr. 253).

In May 2007, Dr. Wiles performed a lumbar interbody fusion at the L4-5 and L5-S1 levels with the placement of inter body cages and screw fixation (Tr. 237, 242-43, 280-84). At her six-week check-up in June 2007, Dr. Wiles noted Plaintiff's progress was satisfactory (Tr. 247). Upon physical examination, Plaintiff had some tenderness to the lumbar spine (Tr. 247). Straight leg raise testing produced some back discomfort on the left (Tr. 247). Motor strength and sensory examinations were normal (Tr. 247). Dr. Wiles continued to prescribe Lyrica, which Plaintiff indicated helped a great deal with her leg discomfort (Tr. 247). Dr. Wiles told Plaintiff to wean off of Percocet and she did not ask for a refill (Tr. 247). Plaintiff was to return for a follow-up appointment in six weeks (Tr. 247), but there is no evidence that she did so or that she sought further follow-ups for back pain.

Eight months later, Plaintiff sought emergency room care in March 2008, for reasons unrelated to her claim for disability (Tr. 318). She left prior to completing the physical examination (Tr. 320). Near the end of the year, in November 2008, Plaintiff complained of left leg pain (Tr. 314). A bilateral arterial physiologic examination was normal (Tr. 314). Plaintiff sought emergency room care again in March 2009 (Tr. 303-07), September 2010 (Tr. 293-96), and August 2011 (Tr. 286-90). At these visits, Plaintiff generally reported no back or leg pain, had a normal range of motion and was independent in her activities of daily living (Tr. 287-89, 304-05).

In May 2012, Wayne Gilbert, M.D., performed a physical consultative examination of Plaintiff (Tr. 333-35). Dr. Gilbert noted that Plaintiff used no assistive device (Tr. 333). Plaintiff was diagnosed with diabetes in 1999, and was prescribed oral medication (Tr. 333). She switched to insulin in 2008, but had stopped all diabetes medication in 2010, and was not receiving any treatment (Tr. 333). She reported frequent urination when her blood sugars were high (Tr. 333). She stated that her vision had decreased; she was supposed to wear glasses but did

3

not (Tr. 333). She had smoked one-half to two packages of cigarettes each day for 30 years (Tr. 334). She had been fired from her last job in April 2005 (Tr. 334). Upon physical examination, Dr. Gilbert noted that Plaintiff's cervical spine range of motion was minimally limited in extension to 50 degrees, right rotation to 70 degrees, and left rotation was normal (Tr. 334). Her shoulder range of motion was intact and she had full range of motion at the elbows, wrists, and hands with good hand grips (Tr. 334-35). She had normal range of motion of the knees and ankles and her muscle strength was 5/5 (Tr. 334-35). Straight leg raise testing was limited on the left side and she had discomfort in the lumbar area worsened by maneuvers (Tr. 335). Dr. Gilbert diagnosed chronic back pain with exacerbation, worsening; and diabetes, uncontrolled (Tr. 335). He opined that Plaintiff would be limited in sitting or walking more than 20 minutes at a time, activities requiring repetitive bending, lifting, pushing, or pulling (Tr. 335).

 Also in March 2012, Diana Whitehead, Ph.D., and Anna Palmer, licensed senior psychological examiner, performed a psychological consultative examination of Plaintiff (Tr. 323-26). Plaintiff reported that she was required to go to family counseling when she was 15 or 16 years old and she denied ever having received any other mental health treatment (Tr. 324). She stated that she was not prescribed any psychotropic medications (Tr. 324). Ms. Palmer observed that Plaintiff's posture was upright and her gait was normal; she made appropriate eye contact and no psychomotor abnormalities were noted (Tr. 324). Plaintiff stated she lived alone and that her activities of daily living included spending time listening to music and reading, talking to family members and her boyfriend, and doing household chores such as sweeping, mopping, washing dishes, and doing laundry (Tr. 325-26). She occasionally went shopping (Tr. 325). Dr. Whitehead and Ms. Palmer diagnosed a major depressive disorder, recurrent, moderate; and a posttraumatic stress disorder (Tr. 326). They assessed that Plaintiff should be able to comprehend and follow both simple and somewhat detailed job instructions; her concentration and persistence appeared adequate to meet the demands of at least simple work-related decisions; she showed a satisfactory ability to interact with others in an appropriate manner; and she did not appear to be limited in her ability to adapt to changes in the work place (Tr. 326).

 In January 2013, Plaintiff went to the emergency room with abdominal pain and was admitted to the hospital for uncontrolled diabetes mellitus (Tr. 351). Medical providers noted that she was noncompliant with her medication; she did not see a primary care physician and took medication only when she could get it (Tr. 351). She smoked one pack of cigarettes each day and took a "roxy" (Roxicodone) four to five times a year (Tr. 356). Upon physical examination, she had no tenderness in her muscles or extremities and had a full range of motion (Tr. 362). Plaintiff was discharged a few days later in stable condition (Tr. 351). Medical providers recommended a diabetic diet and gave her instructions for continuing care (Tr. 351).

[Doc. 18, pgs. 3-7].

4

The Commissioner did not include in her summarization of the medical evidence the opinions of the State Agency physicians and psychologist, which the Court believes are critical to a proper analysis of the ALJ's decision and the ultimate resolution of this case. They are set forth in the Plaintiff's brief as follows:

> At the request of DDS, Reeta Misra, M.D. reviewed Plaintiff information on May 25, 2012 and rendered an opinion as to physical conditions and impairments (Tr. 69-71). This source opined to Plaintiff being capable of lifting 20 pounds occasionally and 10 pounds frequently; standing and/or walking 6 hours in an 8-hour workday; sitting for a total of 6 hours in an 8-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders/ropes/scaffolds (Tr. 69-71). This source felt Plaintiff had severe impairments, but they fell short of the listing (Tr. 71).
> At the request of DDS, on August 15, 2012, Andrew Phay, Ph.D reviewed Plaintiff information and rendered an opinion as to mental impairments and resulting limitations (Tr. 114-115). This source opined to Plaintiff having no more than mild limitations in functioning based on the established mental impairments (Tr. 115).
> At the request of DDS, on August 17, 2012, Anita Johnson, M.D. reviewed Plaintiff's information and opined to physical conditions and limitations (Tr. 114). This source felt that there was insufficient evidence to assess worsening of impairments (Tr. 114).

[Doc. 16, pgs. 6-7].

The Plaintiff's testimony at the administrative hearing is summarized in the Commissioner's brief as follows:

> At her administrative hearing on August 2, 2013, Plaintiff testified that she could not work because of back pain that moved down her left leg to her toe (Tr. 37). She had numbness and what felt like lightning streaks down her left leg (Tr. 38). She stated she had diabetes but could not afford insulin or a way to check her blood sugars (Tr. 39). When her blood sugar was high, she had severe confusion, felt angry for no reason, and had double vision (Tr. 44). She also had incontinence that worsened when her sugars were high (Tr. 39, 47-48). Her blood sugar was high every day (Tr. 44). She also complained of headaches (Tr. 39). With regard to her alleged mental impairments of depression and anxiety, she stated she had trouble dealing with people (Tr. 41-42). She did not take any medications for any of her conditions, and instead used musical therapy and heat therapy for her pain

5

> (Tr. 40). She estimated she could be on her feet for three or four hours during a workday, and could stand for about two hours at one stretch before needing to lay down (Tr. 40). She estimated that she could sit for 45 minutes to 1 hour before needing to get up and move around (Tr. 41). She could lay down for three to four hours before needing to get up (Tr. 41). She stated she had trouble bending or stooping and had problems putting on her shoes and socks (Tr. 43).

[Doc. 18, pgs 7-8].

At the hearing, the ALJ took the testimony of Ms. Donna Bardsley, a Vocational Expert ["VE"]. He asked her to assume that if he found Plaintiff was "limited to sedentary work, with no climbing ladders, ropes, or scaffolds, no more than occasional climbing ramps, and stairs, balancing, stooping, kneeling, crouching, or crawling…" with "a sit/stand option, with alternating intervals of one hour" and that mentally "she's able to perform and maintain concentration for simple and detailed tasks…," did jobs exist in the national economy which a person with Plaintiff's age, limited education and work history could perform? (Tr. 49). Ms. Bardsley identified millions of jobs in the national economy and over 2,500 jobs in Tennessee which such a person could perform. (Tr. 49). Plaintiff's counsel altered the hypothetical changing the one hour sit/stand option to sitting, standing or walking for only 30 minutes at a time. The VE testified there would be no jobs. (Tr. 50).

On August 19, 2015, the ALJ filed his hearing decision. He found that Plaintiff had severe impairments of a back disorder, diabetes mellitus, a major depressive disorder, and a posttraumatic stress disorder (Tr. 14). He stated that she did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 15). In making this finding, he found that

6

from a mental standpoint Plaintiff had no restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties in concentration, persistence or pace, with no episodes of decompensation (Tr. 16).

The ALJ then found Plaintiff's RFC, as he had stated it to the VE (Tr. 16). He then discussed the medical evidence in detail. Regarding her back pain, he mentioned the findings of Dr. Wiles in 2005 and 2007, the surgery performed on May 17, 2007, and the fact that Plaintiff saw him once in June 2007, with no "further treatment or follow-ups for back pain" (Tr. 17).

With regard to her diabetes, he noted that she had stopped taking her insulin and other medications two years ago. He mentioned her January 2013 hospitalization for uncontrolled diabetes. He stated that the medical record did not document "significant and persistent disorganization of motor function nor has [her diabetes] resulted in acidosis, visual, structural or functional changes which would preclude the Plaintiff from engaging in gainful activity" (Tr. 17-18).

He then discussed the consultative examination performed by Dr. Gilbert, including his opinion that Plaintiff would be limited to sitting or walking for more than 20 minutes at a time. He stated that he gave "Dr. Gilbert's opinion little weight as his opinion is not well supported by medical [sic] acceptable clinical findings and diagnostic testing, and his opinion is inconsistent with other substantial medical evidence of record" (Tr. 18). He also noted that Plaintiff "testified at the hearing that she could stand/sit for greater than 20 minutes at a time" (Tr. 18).

The ALJ then discussed the consultative mental examination performed by Dr. Whitehead and Ms. Palmer. Although Plaintiff has not questioned the ALJ's findings regarding the effects of her mental impairment, the ALJ's discussion of this exam is noteworthy because he mentioned the observation at the exam that Plaintiff's "posture was upright and her gait was normal" (Tr. 18-19) Also, he noted that they opined Plaintiff showed "a satisfactory ability to interact with others in an appropriate manner…" (Tr. 18-19).

He then stated that while Plaintiff's impairments could produce her alleged symptoms, her statements about the limiting effects of those symptoms were not entirely credible. (Tr. 19). He then pointed out several reasons for this opinion. He asserted that the evidence showed she could sit, stand, walk and move about in a satisfactory manner; had good use of her upper and lower extremities; and had not had aggressive treatment for pain or been hospitalized due to pain. He also described her daily activities. He found that the evidence "fails to substantiate the…allegations of total disability" (Tr. 19). He stated her allegations were only credible to the extent they were consistent with the RFC found by him (Tr. 19).

In addition to assignment of little weight to Dr. Gilbert's opinion noted above, the ALJ opined as to the weight he was giving to the State Agency physical medical consultants. He said he gave them "some weight," but that he "considered the (Plaintiff's) subjective complaints of pain and lower extremity sensory loss in limiting her" in his stated RFC finding (Tr. 19).

While he found Plaintiff could not return to her past relevant work, he found based upon the testimony of the VE that a significant number of jobs existed in the national economy which Plaintiff could perform. Accordingly, he found that Plaintiff was not disabled. (Tr. 20-21).

Plaintiff asserts that the ALJ erred in two respects. First, she states that he erred by failing to properly evaluate the opinion of Dr. Gilbert, the consultative medical examiner who examined Plaintiff at the behest of the Commissioner. Second, she asserts that the ALJ erred in his assessment that Plaintiff was not entirely credible.

Dr. Gilbert opined that the Plaintiff "would be limited in sitting or walking more than 20 minutes at a time, activities requiring repetitive bending, lifting, pushing or pulling" (Tr. 335). The ALJ rejected this restriction and gave Dr. Gilbert's opinion in this regard little weight. The ALJ's stated reasons for this lack of weight were because he found the opinion was not well supported by tests or findings and was inconsistent with other substantial medical evidence in the record (Tr. 18). Plaintiff complains that the ALJ did not detail the other medical evidence which did not support that conclusion.

An ALJ is required to set forth a valid basis for rejecting the opinions of treating, examining and non-examining sources. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). Plaintiff asserts that a failure to do so indicates that the ALJ failed to give Plaintiff a "full and fair hearing" as required by *Lashley v. Sec'y of Health and Human Services*, 708 F.2d 1048, 1051 (6th Cir. 1983). Here, the ALJ did not directly state the specific evidence he relied upon to in ascribing little weight to Dr. Gilbert. Also, it is

clear that if the ALJ had found Dr. Gilbert's limitations to be an accurate description of Plaintiff's abilities, Plaintiff would have been disabled according the testimony of the VE (Tr. 50).

That said, however, the ALJ gave numerous reasons for his RFC finding which, of course, did not contain Dr. Gilbert's limitation. These included the fact that Plaintiff only had one follow-up visit after her surgery (Tr. 17); no significant or persistent disorganization of motor function (Tr. 17-18); Dr. Gilbert's findings during the consultative exam (Tr. 18); Dr. Whitehead's observation that Plaintiff had an upright posture and normal gait (Tr. 18); Plaintiff's statements (Tr. 17-19); lack of aggressive treatment for pain or hospitalization because of pain (Tr. 19); and he gave some weight to the State Agency physicians, not giving them full weight because he found Plaintiff was limited to sedentary work as opposed to light work (Tr. 19). If there were substantial evidence to support the RFC finding then substantial evidence exists for giving little weight to Dr. Gilbert's opinion.

In this regard, the ALJ could have elaborated more on the opinion of Dr. Reeta Misra, the State Agency physician who reviewed all of Plaintiff's medical records, including the consultative report of Dr. Gilbert (Tr. 70-71). In fact, it is clear that the ALJ relied totally on Dr. Misra's findings that Plaintiff could occasionally climb ramps and stairs; could never climb ladders, ropes or scaffolds; and could only occasionally balance, kneel, crouch or crawl. *Id.* These restrictions in the ALJ's RFC finding, and his question to the VE, thus came verbatim from the opinion of Dr. Misra (Tr. 70). Dr. Misra

10

also opined that Dr. Gilbert's opinion relied "heavily on the subjective report of symptoms and limitations provided" by Plaintiff, was "without substantial support from other evidence of record," and was "an underestimate of the individual's restrictions/limitations and based only on a snapshot of the individual's functioning." (Tr. 71).

The ALJ can accept the well-supported opinion of a non-examining State Agency doctor or psychologist over the less supported opinion of a consultative examiner, *Ealy v. Commissioner of Soc. Sec.* 594 F.3d 504, 513 (6th Cir. 2010), or even over the poorly-supported opinion of a treating physician, *Combs v. Commissioner of Soc. Sec.,* 459 F.3d 640 (6th Cir. 2006).

The ALJ found that Plaintiff was severely restricted, and limited her to a reduced range of sedentary work. The fact the ALJ did not believe that Plaintiff was prohibited from standing or walking for over 20 minutes at a time is supported by substantial evidence. With all of the substantial evidence present that contradicts Dr. Gilbert's restriction, including Plaintiff's own testimony, the Court finds no need to remand for the ALJ to further consider Dr. Gilbert's opinion.

Plaintiff also asserts that the ALJ erred in his determination that Plaintiff lacked total credibility regarding the severity of her impairments. In this regard, the ALJ found Plaintiff had serious restrictions in performing certain work-related activities. Once again, he explained the reasons throughout his decision for his findings as set forth hereinabove.

Plaintiff claims that her surgery was unsuccessful, and that the pain she experiences affects every aspect of her life. However, the lack of evidence that she sought further treatment for her back pain is inconsistent with her contention. For example, she had emergency room visits in 2009, 2010, and 2011. While a history of chronic back pain or the back surgery was mentioned in the records of these visits, back pain was not the complaint for which she sought treatment. (Tr. 287-303). One would certainly think that a person with the kind of pain Plaintiff claims she experienced (i.e., that she must change positions at least every 20 minutes) she would have sought emergency room treatment on a frequent basis.

The point is, there is precious little objective evidence, or even much in the way of *subjective* medical evidence, to support Plaintiff's credibility. Time and again, the Sixth Circuit has held that the ALJ's credibility findings are entitled to great deference from reviewing courts. *See Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013), *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-13 (6th Cir. 2010), and *Ulman v. Commissioner*, 693 F.3d 709, 713-14 (6th Cir. 2012). The ALJ's stated reasons in the present case support his decision not to find Plaintiff credible.

The Court finds that there is substantial medical evidence to support the partial rejection of the opinion of Dr. Gilbert. Also, the Court finds that the ALJ did not err in his determination that Plaintiff was only partially credible. Accordingly, it is respectfully recommended that Plaintiff's Motion for Summary Judgment [Doc. 15] be DENIED, and that Defendant Commissioner's Motion for Summary Judgment [Doc. 17] be

GRANTED.[1]

                                                        Respectfully submitted,

                                                        s/ Clifton L. Corker
                                                      United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).